Filed 2/8/22  P. v. Pisano CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>WILLIAM A. PISANO,<br><br>    Defendant and Appellant. | G059948<br><br>(Super. Ct. No. 18WF1718)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed as modified; remanded with directions.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant William A. Pisano of one count of assault on a peace officer with a deadly weapon. (Pen. Code, § 245, subd. (c).)[1] The court sentenced defendant to the lower term of three years in state prison.

Defendant raises five issues on appeal. First, he seeks independent review of the court's *Pitchess* ruling with respect to several officers' records.[2] Second, he contends the court violated his rights to a speedy trial by granting two continuances without good cause. Third, he argues there was insufficient evidence of assault on a peace officer with a deadly weapon. Fourth, he claims the court erred by denying his motion to reduce the felony conviction to a misdemeanor. Finally, he contends the court erred by imposing various fines and fees.

We agree in part with defendant's latter contention. The court's minute order and abstract of judgment include certain fees not orally imposed at the sentencing hearing. We accordingly remand and direct the court to correct the minute order and abstract of judgment by striking those fees, which we identify in detail below. We otherwise disagree with defendant's remaining contentions and affirm the judgment.

FACTS

*The Prosecution Case*

One evening in 2018, a Huntington Beach police officer, Frank Gallant, was working at a DUI checkpoint. Defendant approached the checkpoint driving a Ford F250 truck. Gallant used his hands and flashlight to direct defendant to drive to the right where he would be evaluated. Defendant initially started to drive to the signaled area but then stopped driving. When defendant was a few feet away from Gallant, he held up his

---

[1]    All further statutory references are to the Penal Code.

[2]    (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531. (*Pitchess*))

2

middle finger, pressed it against the driver's door glass, and mouthed "Fuck you." Defendant then drove toward Gallant accelerating at a "pretty high rate of speed" and causing Gallant to jump out of the way. Defendant continued to make eye contact with Gallant as he drove past him. When Gallant jumped out of the way, the side mirror of the truck was very close to Gallant's head. Based on his training and experience in traffic collisions, Gallant believed he could have been seriously injured or killed.

Gallant yelled at defendant to stop, but he continued driving and knocking over cones and delineators at 40 to 45 miles per hour. Officers Jeff Gasteiger and Brad Smith pursued and eventually apprehended defendant. Defendant refused to exit his truck but complied after the officers told him they would break his window to unlock the door. After defendant was in the back of a police car, Gallant approached and told defendant, "Fuck me? Fuck you."

*The Defense Case*

Defendant testified he waited at the DUI checkpoint behind numerous cars. He also admitted to giving the middle finger to Gallant as he approached the stop sign but denied saying anything. After defendant turned his wheel to where the other vehicles were headed, Gallant ran up to the truck and punched the mirror. This caused defendant to panic and fear for his life so he accelerated as fast as his 20-year-old truck would go. Once defendant noticed police officers were pursuing him, he pulled over when he got to a safe location. He stayed in his car because the officers had their guns drawn. After he was apprehended, Gallant approached him and said, "Fuck you."

DISCUSSION

Defendant contends the court committed *Pitchess* error. He also argues the court violated his speedy trial rights, substantial evidence did not support his conviction for assault on a peace officer with a deadly weapon, and the court abused its discretion by refusing to reduce his felony conviction to a misdemeanor. Finally, he claims the court

3

erred by imposing fines and fees not orally pronounced at the sentencing hearing or that were otherwise improper.

We agree in part with defendant's latter contention. The court's minute order and abstract of judgment include certain fees not orally imposed. We accordingly remand and direct the court to correct the minute order and abstract of judgment by striking those fees. Defendant's remaining contentions have no merit, and we affirm the judgment in all other respects.

*The Pitchess Motion*

Before trial, defendant moved to discover the personnel records of Gallant, Gasteiger, Smith, and Sergeant Eric Warken. (*Pitchess*, *supra*, 11 Cal.3d 531.) Defendant sought records from the police department personnel files concerning, among other things, "[l]ack of credibility/falsifying police reports, [citation] [¶] [p]rior acts involving moral turpitude," and information pursuant to *Brady v. Maryland* (1963) 373 U.S. 83. In its opposition to defendant's motion, the City of Huntington Beach noted defendant mistakenly referenced Sergeant Warken. According to the opposition, "the initial report erroneously initially indicated it was written by Sergeant Warken, who was not otherwise noted as involved; Officer Gasteiger subsequently submitted a supplemental report correcting the error . . . ." Despite this notice, defendant's counsel subsequently filed another declaration under seal seeking the records of Gallant, Smith, and Warken but omitting Gasteiger. The court accordingly found good cause to review the files of Gallant, Smith, and Warken (*People v. Samuels* (2005) 36 Cal.4th 96, 109), conducted an in camera review (Evid. Code, § 1045, subd. (b)), and ordered one item turned over to the defense (see *People v. Mooc* (2001) 26 Cal.4th 1216, 1226-1232.)

The People do not object to our independent review of the confidential proceedings. (*People v. Mooc*, *supra*, 26 Cal.4th at p. 1229.) We have reviewed the sealed transcript of the in camera hearing. The court placed the custodian of records for

4

the Huntington Beach Police Department under oath in the presence of counsel for the City of Huntington Beach.  The custodian provided the records falling within the parameters of the request.  The court examined the files with the custodian on the record and identified the documents it reviewed.  The court found one discoverable document and ordered it be turned over to the defense.  The court otherwise found no discoverable documents.  We agree with the court.  The court accordingly did not abuse its discretion. (*Becerrada v. Superior Court* (2005) 131 Cal.App.4th 409, 413.)

*The Court Did Not Violate Defendant's Speedy Trial Rights*

Defendant next contends the court violated his speedy trial rights by allowing two continuances due to Gallant's unavailability. We disagree and uphold the continuances as a proper exercise of judicial discretion.

A.  Relevant Trial Court Proceedings

On October 26, 2020, when trial was scheduled to begin, the People filed a motion seeking to continue the case until December 21, 2020.  The People claimed there was good cause for the continuance because Gallant was out on medical leave due to an unrelated on-duty injury.  According to the motion, the People served a subpoena on Gallant on or about September 13, 2020, at the Huntington Beach Police Department, requesting his testimony for October 26, 2020.  Around October 20, 2020, the Huntington Beach Police Department Court Liaison informed the People that Gallant was unavailable until after his next "re-check" with his physician and his department manager on December 1, 2020.  On October 21, 2020, the People again spoke to the Huntington Beach Police Department Human Resources Manager who advised that Gallant would not be able to testify until after his next department meeting on December 1, 2020.

Defendant opposed the request and argued Gallant's testimony might be cumulative or available through another witness.  Defendant also questioned whether Gallant's testimony could be obtained within a reasonable amount of time.  The court

5

asked how defendant would be prejudiced by the continuance when he was out of custody. Defendant's counsel responded defendant was asserting his speedy trial rights.

In response, the People argued defendant had previously requested many continuances, Gallant was the victim in the instant case and a material witness who was unavailable due to an unrelated on-duty injury, and there were no statements showing anyone else could testify to the same information. The court granted the continuance and set the trial date for December 1, 2020.

On December 1, 2020, the People requested a second continuance until January 19, 2021. According to the motion, the People served a subpoena on Gallant on or about October 27, 2020, at the Huntington Beach Police Department, requesting his testimony for December 1, 2020. On November 20, 2020, Gallant informed the prosecutor he remained injured after major hip surgery and his doctor had not cleared him to return to work until after his next doctor's appointment in mid-January. He was "very confident" he would be cleared to testify after January 18, 2021. The People also submitted a doctor's notice of disability along with the motion.

Defendant opposed the request and claimed Gallant was well enough to testify even if he was unable to return to work. To support this argument, defendant suggested a defense investigator observed Gallant carry groceries from his car. Among other things, defendant also argued the People did not interview other witnesses at the DUI checkpoint to see if the same testimony could be provided by someone else. Defendant accordingly claimed the People could not establish Gallant's testimony was not cumulative. The court ultimately granted the second request for a continuance.

On December 15, 2020, defendant filed a motion to dismiss for violation of his speedy trial rights pursuant to section 1382. The court denied the motion in January 2021.

6

B.  Applicable Law and Standard of Review

Section 1382 "is one of the principal provisions implementing a criminal defendant's statutory right to a speedy trial" and provides statutory deadlines for bringing a criminal defendant to trial.  (*People v. Sutton* (2010) 48 Cal.4th 533, 545.)  In a felony case, a defendant is entitled to a dismissal if he is not brought to trial within 60 days of his arraignment unless the defendant enters a general waiver, consents to a continuance, or good cause is shown.  (*Ibid.*)  "Continuances shall be granted only upon a showing of good cause."  (§ 1050, subd. (e).)  A trial court has broad discretion to determine whether good cause exists to continue a trial (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037), and a decision to grant a continuance under section 1382 is reviewed for an abuse of discretion (*People v. Memro* (1995) 11 Cal.4th 786, 852).

The unavailability of a witness constitutes good cause for a continuance where:  (1) the party seeking the continuance exercised due diligence to secure the attendance of the witness; (2) the witness' testimony is material; (3) the testimony is not cumulative; (4) the testimony can be obtained within a reasonable time; and (5) the facts about which the witness would testify cannot otherwise be proven.  (*Jensen v. Superior Court* (2008) 160 Cal.App.4th 266, pp. 270- 271; *Baustert v. Superior Court* (2005) 129 Cal.App.4th 1269, 1277 (*Baustert*).)

C.  Good Cause Existed for the Continuances

Here, defendant argues the People failed to satisfy the third through fifth prongs above.  With respect to the third prong, defendant claims the People failed to demonstrate Gallant's testimony was not cumulative of matters to which other witnesses could testify.  As to the fourth prong, he contends the delay of nearly three months from October 26, 2020 until January 19, 2021 was excessive with no guarantee Gallant would be available.  Finally, defendant argues the fifth prong was not satisfied because the People failed to interview 23 additional witnesses at the DUI checkpoint.

7

As the People correctly note, Gallant was the alleged victim in the instant case and accordingly was essential to the prosecution's case. Defendant does not explain how Gallant's testimony could be cumulative of any other witness, and he does not dispute the testimony is material. We also are convinced the People took appropriate measures to ensure Gallant's testimony could be obtained within a reasonable time. The prosecutor's declaration stated she had spoken to Gallant who said he remained injured after major hip surgery but he was "very confident" he could testify after January 18, 2021. Although the trial was continued for almost three months, this was not an unreasonable amount of time to secure Gallant's appearance given his importance to the case. Defendant also was out of custody and previously had requested numerous continuances. Finally, as the court noted, defendant's suggestion that the prosecution was required to interview and analyze every person at the DUI checkpoint is "absurd." No one else could testify as to defendant's interactions with Gallant. The court's finding of good cause accordingly was supported by the evidence and did not constitute an abuse of discretion.

*Baustert*, *supra*, 129 Cal.App.4th 1269, which defendant cites, is inapposite. The officer in *Baustert* was unavailable due to a vacation while Gallant was injured and recovering from surgery. (*Id.* at p. 1273.) The prosecutor also did not exercise due diligence in attempting to secure the officer's presence at trial. (*Id.* at p. 1278.) Indeed, the prosecutor voluntarily released the officer from the subpoena prior to requesting a continuance. (*Ibid.*) Similar facts do not exist here.

Even if we were to agree the court abused its discretion by granting the continuances, we would still affirm the judgment because defendant has not demonstrated prejudice. (*People v. Johnson* (1980) 26 Cal.3d 557, 574 [defendant seeking to reverse a conviction due to a violation of the statutory right to a speedy trial "must prove not only unjustified delay in bringing his case to trial but also prejudice flowing from that delay"].) Defendant contends he "was prejudiced as a result of the continuances . . .

because . . . delay causes memories to fade." This general assertion does not demonstrate prejudice particularly when defendant himself requested numerous continuances prior to October 26, 2020. Considering all the above, we are convinced there was no violation of defendant's speedy trial rights.

*Sufficient Evidence Supports the Conviction for Assault with a Deadly Weapon*

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) The elements of assault on a peace officer with a deadly weapon, as applied to the facts presented herein, are as follows: (1) "The defendant did an act with [a deadly weapon] that by its nature would directly and probably result in the application of force to a person;" (2) "The defendant did that act willfully;" (3) "When the defendant acted, [he] was aware of facts that would lead a reasonable person to realize that [his] act by its nature would directly and probably result in the application of force to someone;" (4) "When the defendant acted, [he] had the present ability to apply force [with a deadly weapon] . . . to a person;" (5) "When the defendant acted, the person assaulted was lawfully performing [his] duties as a [peace

9

officer];" (6) "When the defendant acted, [he] knew, or reasonably should have known, that the person assaulted was a [peace officer] who was performing [his] duties;" and (7) "The defendant did not act [in self-defense]." (CALCRIM No. 860; §§ 240, 245, subd. (c).)

Assault is a general intent crime. (*People v. Williams* (2001) 26 Cal.4th 779, 788.) An "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*Id.* at p. 790.)

Here, substantial evidence showed defendant drove toward Gallant causing Gallant to believe he could have been seriously injured or killed. He testified defendant drove toward him at a "pretty high rate of speed" forcing him to jump out of the way. He also testified the side mirror of the truck was very close to his head when he jumped out of the way. When viewing the record in the light most favorable to the judgment, the evidence shows defendant "'willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery.'" (*People v. Williams, supra*, 26 Cal.4th at p. 782.)

Defendant claims Gallant testified he was one and a half feet away from the truck's front left tire as defendant drove past him. Defendant accordingly contends his truck could not have been used in a manner in which serious injury or death was likely. But the record does not support defendant's argument. Gallant did not testify about the distance between him and defendant's truck as defendant drove past him. Instead, Gallant testified defendant was approximately one and a half feet away *before* driving toward him.

Defendant also notes Gallant slapped defendant's truck at some point during the incident and told defendant, "Fuck You" when defendant was in the back of a

10

police car. But none of these facts suggest defendant's truck was not used in a manner likely to cause death or great bodily injury. Sufficient evidence accordingly supported the conviction for assault with a deadly weapon.

*The Court Lacked Discretion to Reduce Defendant's Conviction to a Misdemeanor*

Defendant further claims the court abused its discretion by refusing to reduce defendant's felony conviction for assault on a peace officer with a deadly weapon to a misdemeanor. The court did not err. Defendant's section 245, subdivision (c) offense is not a wobbler so the court lacked discretion to reduce the felony conviction to a misdemeanor.

A. Relevant Trial Court Proceedings

At sentencing, defendant's counsel stated, "[W]ould it be a wobbler, I would ask the court for it to be reduced pursuant to [section 17, subdivision (b)]; however, that's not the case." Defendant's counsel then requested probation.

In denying the request for probation, the court appeared to view defendant's counsel's comment as a request for the court to exercise its discretion to reduce the conviction to a misdemeanor. The court stated it did not "think it should be reduced" and did not expect counsel "to make a . . . totally inapplicable and inappropriate 17(B) motion . . . ."

B. Assault on a Peace Officer is Not a Wobbler Offense

Certain crimes, known as "wobblers," can be treated as either felonies or misdemeanors at the discretion of the court. (*People v. Park* (2013) 56 Cal.4th 782, 789.) If a jury finds a defendant guilty "of a wobbler that was not charged as a misdemeanor, the procedures set forth in section 17, subdivision (b) . . . govern the court's exercise of discretion to classify the crime as a misdemeanor." (*Id.* at p. 790.)

Here, section 245, subdivision (c), assault on a peace officer, is punishable in state prison for a term of three, four, or five years. (§ 245, subd. (c).) Thus, contrary

11

to defendant's assertion, section 245, subdivision (c) is a straight felony and the court lacked discretion to reduce the conviction to a misdemeanor.

In his reply brief, defendant concedes section 245, subdivision (c) is not a wobbler but argues a three-year prison term was too lengthy. Defendant's failure to raise this issue in the opening brief forfeits the issue on appeal. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295 ["[a]rguments raised for the first time in the reply brief" will not be addressed].)

*Fines and Fees*

Finally, defendant argues the minute order and abstract of judgment should be corrected to strike references to fines and fees that were not orally imposed. Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant also contends the court erred by imposing a $300 restitution fine, which he further claims was an excessive fine. We agree the abstract of judgment should be corrected to strike references to a $40 court operation fee and $30 criminal conviction assessment fee *but not* a $300 suspended parole revocation fine. We disagree with defendant's remaining arguments regarding the $300 restitution fine.

The oral pronouncement of sentence controls over the abstract of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) The appellate court also has inherent power to order correction of the abstract of judgment if it does not accurately reflect the oral judgment of the court. (*Ibid.*) Here, the court orally imposed a $300 restitution fine pursuant to section 1202.4. At the sentencing hearing, the court stated, "He's ordered to pay the mandatory $300 state restitution fine. [¶] I make a *Duenas* finding with respect to the remaining fees, to the extent there are any." Despite the court's remarks, the abstract of judgment and minute order reflect imposition of an additional $40 court operation fee, a $30 criminal conviction assessment fee, and a $300 suspended parole revocation fine.

12

The People concede the abstract of judgment in the instant case should be corrected to strike the $40 court operation fee and $30 criminal conviction assessment fee not orally imposed. But the People claim the $300 suspended parole revocation fine, which was not orally pronounced, was mandatory under section 1202.45 and cannot be stricken from the abstract of judgment. We agree.

"Under subdivision (b) . . . section 1202.4,, "a trial court *must* impose 'a separate and additional restitution fine' as part of the judgment of conviction entered against a criminal defendant, 'unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' If the 'sentence includes a period of parole,' then the court *must* also impose a parole revocation fine 'in the same amount as that imposed pursuant to subdivision (b) of [s]ection 1202.4.'" (*People v. Smith* (2001) 24 Cal.4th 849, 851., fn. omitted.) A trial court's failure to impose a parole revocation fine in an amount not matching the restitution fine is an unauthorized sentence that may be corrected on appeal. (*Id.* at pp. 852-853.) Thus, while the court did not orally pronounce the $300 parole revocation fine identified in the abstract of judgment, the failure to impose this fine in the abstract of judgment would have constituted an authorized sentence correctable on appeal. We therefore remand and direct the court to correct the minute order and abstract of judgment by striking the $40 court operation fee and $30 criminal conviction assessment fee. But we deny defendant's request to make any modifications concerning the $300 suspended parole revocation fine.

Citing *Dueñas*, defendant further challenges the $300 restitution fine and claims the People failed to prove defendant's present ability to pay. The People contend defendant forfeited his challenge because he never objected to the imposition of the restitution fine based on his inability to pay. Assuming, without deciding, defendant did not forfeit his appellate claims and that the court violated his due process rights by imposing the restitution fine, any error was harmless beyond a reasonable doubt. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1075, citing *Chapman v. California* (1967) 386

13

U.S. 18, 24, *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140, & *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030-1031.) Defendant has the potential to earn a wage in prison of at least $12 a month (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1)), and nothing in the record suggests a physical or mental infirmity casting doubt on defendant's ability to obtain funds for payment of the imposed restitution fine in the future. (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 229 [defendant's ability to pay includes the ability to obtain prison wages and to earn money after his release from custody].)

Defendant next contends the $300 restitution fine violates the Eighth Amendment's prohibition on excessive fines. We are not persuaded. A fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334.) In considering whether a fine is disproportionate, the defendant's ability to pay is only one factor to be considered. Courts must also consider the defendant's culpability, the relationship between the harm and the penalty, and the penalties imposed in similar statutes. (*Ibid.*; see *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.) Here, the $300 fine was not grossly disproportionate to defendant's crime. Defendant attempted to run over a police officer with his truck, forcing the officer to jump out of the way. The court's imposition of the minimum amount allowable by law was not constitutionally excessive.

## DISPOSITION

The court is directed to correct the minute order and abstract of judgment by striking the $40 court operation fee and $30 criminal conviction assessment fee. The court also is directed to prepare an amended abstract of judgment reflecting these modifications and to forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

MARKS, J.*

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.